DENNIS O'DAY LESLIE AND FRANCES PAULINE LESLIE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leslie v. Commissioner
Docket No. 18133-82.
United States Tax Court
T.C. Memo 1984-61; 1984 Tax Ct. Memo LEXIS 615; 47 T.C.M. (CCH) 1039; T.C.M. (RIA) 84061; February 6, 1984. Dennis O'Day Leslie, pro se. Steve Mather, for the respondent. DINAN
MEMORANDUM FINDINGS OF FACT AND OPINION DINAN, Special Trial Judge: This case was assigned to Special Trial Judge Daniel J. Dinan pursuant to the provisions of section 7456(c) and (d), [1] and General Order No. 8, 81 T.C. V (July 1983). Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Section 6653(a)
Year
Deficiency
Addition to Tax
1978
$1,248
$62
1979
2,585
129
After concessions by petitioners, [3] the issues for decision are (1) whether petitioners are entitled to a casualty loss deduction for 1978 by reason of a loss of several ornamental trees from drought, (2) whether petitioners sustained a casualty loss in 1979 by reason of the breakdown of the engine in their automobile, (3) whether contributions *617 in 1978 and 1979 to a chapter of the Universal Life Church are deductible, and (4) whether any part of petitioners' underpayment of tax for 1978 and 1979 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Richland, Washington, when they filed the petition in this case. Issue I
During 1978, and for many previous years, petitioners owned property in Lafayette, California. The property contained many large ornamental pine trees. From 1976 through 1978, California experienced severe drought. This drought caused the death of several large pine trees on petitioners' lot. Exactly when the trees died is uncertain. However, it became apparent to petitioners that they were dead by the end *618 of 1978. Petitioners had no insurance covering loss by drought. A nursery estimated that it would cost petitioners $575 to replace the dead pine trees. Petitioners claimed a casualty loss in that amount on their 1978 return, and it was disallowed by respondent. Respondent challenges the deduction on two grounds. He contends that the element of suddenness with respect to the desiccation of the trees has not been demonstrated and that the amount of the claimed loss has not been established. We need not decide whether the death of the trees was sufficiently sudden to be considered a casualty within the meaning of the statute for petitioners have failed to prove that any economic loss actually was sustained as a result thereof. Where property is damaged by casualty, the proper measure of the damage to the property is the difference between the fair market value of the property immediately before the casualty and the fair market immediately thereafter, not to exceed the taxpayer's basis in the property and not to exceed the amount compensated for by insurance or otherwise. Millsap v. Commissioner,46 T.C. 751 (1966), affd. 387 F.2d 420 (8th Cir. 1968); *619 Section 1.165-7(b)(1), Income Tax Regs.
In the instant case, petitioners have failed to show the relevant before and after fair market values of their property. Moreover, we have no way of knowing whether the loss of the trees affected the fair market value of the property overall. Accordingly, we hold that petitioners have failed to show that they sustained a deductible loss as a result of the drought. Issue 2
In September 1978, petitioners purchased a 7 or 8-year old used car for $1,300. Shortly afterwards, an unusual rattling noise developed in the automobile engine. However, the car seemed to run well and petitioners continued to use it. Sometime in early 1979, while driving the car, petitioners heard a loud "clunk" in the motor. They immediately stopped the car and got out to see what had happened. The oil pan had been ripped open and engine parts littered the road. The engine was completely ruined and petitioners sold the car as junk for $50. Petitioners claimed a $1,200 casualty loss on their 1979 return, which was disallowed by respondent. The only issue before us is whether the destruction of petitioners' automobile engine is a casualty loss within the *620 meaning of section 165(c)(3), which speaks of losses arising from "fire, storm, shipwreck, or other casualty." "Other casualty" denotes an accident or sudden invasion by a hostile agency. It excludes the progressive deterioration of property through a steadily operating cause. Maher v. Commissioner,76 T.C. 593, 596 (1981), affd. 680 F.2d 91 (11th Cir. 1982). In the instant case, no evidence was offered to show that, just prior to the engine's breakdown, the car was involved in a collision or invaded by an external force. Under these circumstances, the reasonable inference is that the failure of the engine was due to progressive deterioration and not the result of a "casualty" within the purview of section 165(c)(3). It follows that petitioners are not entitled to the deduction claimed. Issue 3
Petitioner Dennis Leslie was ordained a minister by the Universal Life Church, Inc., Modesto, California (ULC). Once a minister, he chartered a "church" (charter No. 21954) in Lafayette, California. Petitioners' home in Lafayette was its headquarters. Conspicuously absent from the trial record is any information on the purposes and operations *621 of the "church." Petitioners offered no evidence as to who the congregation was; who, in addition to Francis Leslie, as treasurer, were its officers; what sort of services were scheduled; whether any religious functions were performed; or what the fundamental creeds of the "church" were. After becoming members of the "church," petitioners opened a bank account in San Francisco in the name of the "church," against which they alone were authorized to draw chekcs. They used the church account proceeds to pay their personal living expenses. On their 1978 and 1979 returns, petitioners claimed charitable contribution deductions of $5,209 and $11,463.59, respectively, for amounts deposited to the church account. Respondent disallowed the amounts claimed as charitable contributions. In order to be entitled to deduct the claimed charitable contributions under section 170(a), petitioners must prove that the "church" was organized and operated exclusively for religious purposes and that none of its monies inured to their benefit. Section 170(c)(2)(B) and (c); Welch v. Helvering,290 U.S. 111 (1933). Moreover, the fact that the ULC in Modesto has been ruled to be tax *622 exempt does not entitle petitioners to deductions for contributions to the "church" in Lafayette; the latter "church" must satisfy the requirements of section 170(c)(2) on its own. Davis v. Commissioner,81 T.C. 806, 815 (1983). Petitioners have failed to prove that the Lafayette "church" qualified as a section 170(c)(2) organization. They introduced no evidence whatsoever to show that the "church" was operated exclusively for religious purposes, or operated for any religious purposes at all. In addition, the "church's" monies were used to pay petitioners' personal living expenses. Accordingly, we hold that petitioners are not entitled to deduct the payments made to the "church" in 1978 and 1979. Davis v. Commissioner,supra.
Issue 4
As to the section 6653(a) additions to tax, petitioners have the burden of proof. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Since they offered no testimony or other evidence to show that their underpayment of tax was not due to negligence or intentional disregard of the revenue laws, we sustain the additions to tax. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for 1978 and 1979, unless otherwise indicated.↩
3. Since petitioners presented no evidence or argument regarding their entitlement to charitable contribution deductions of $210 and $120, which they claimed on their 1978 and 1979 returns, respectively, we deem them to have conceded these adjustments.↩