WILLIAM L. GASTER AND EDNA E. GASTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gaster v. Commissioner
Docket No. 19454-82.
United States Tax Court
T.C. Memo 1984-590; 1984 Tax Ct. Memo LEXIS 76; 49 T.C.M. (CCH) 38; T.C.M. (RIA) 84590; November 9, 1984. William L. Gaster, pro se. T. Keith Fogg, for the respondent. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: By a statutory notice of deficiency dated May 4, 1982, respondent determined a deficiency in and addition to petitioners' 1980 Federal income tax as follows: Section 6653(a)
Deficiency
Addition [1]
$2,102
$105
*78 The issues for decision are (1) whether petitioners are entitled to a charitable contribution deduction in the amount of $8,010 as claimed on their 1980 joint tax return; and (2) whether petitioners are liable for the section 6653(a) addition to tax for negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners William L. Gaster (Mr. Gaster) and Edna E. Gaster (Mrs. Gaster), husband and wife, resided at 244-43 Timberneck Drive, Hayes, Virginia, at the time the petition herein was filed. Petitioners timely filed their joint Federal income tax return (Form 1040) for their 1980 taxable year with the Internal Revenue Service Center in Memphis, Tennessee. Mr. Gaster is a Federal employee, working as an analyst with the National Aeronautics & Space Administration at the Langley Research Center at Hampton, Virginia. At some point in 1980, Mr. Gaster received a mail-order honorary Doctor of Divinity "degree" from the Universal Life Church, Inc., of Modesto, California (hereinafter Modesto), *79 an entity that enjoyed tax-exempt status under section 501(c)(3) during the year in issue. [2] Mr. Gaster also received a Charter from the Modesto organization in 1980, and started his own local church or congregation called the Hayes Universal Life Church and located in Hayes, Virginia (hereinafter ULC-H). No documentary or other evidence concerning the foundation and organization of ULC-H was offered at trial. The location of the ULC-H was petitioners' personal residence. Petitioners thereafter opened a checking account at the First Virginia Bank of Tidewater (hereinafter the church account) which was styled as follows: Hayes Universal Life Church William L. Gaster, Pastor Box 244-43 Timberneck Drive Hayes, Virginia 23072 The address given was the same as that of petitioners' *80 personal residence. Petitioners had sole signatory authority over the church account, only one signature being required to draw checks thereon. During 1980, petitioners maintained a share draft account at the Langley Federal Credit Union (hereinafter the credit union account). Among the checks written by petitioners on the credit union account during 1980 was a group thereof totalling $8,010, all of which were payable to and deposited in the church account. During 1980, petitioners regularly drew checks on the church account in payment of the mortgage on their personal residence, as well as petitioners' telephone and electric bills. Fuel for petitioners' personal automobile was sometimes purchased with a check drawn on the church account. Several checks bearing the notation that they were for the "expenses" or "house expenses" of a particular month were also drawn on the church account by petitioners during 1980. No evidence was offered as to the nature of these expenses. One check drawn on the church account by petitioners, payable to the Universal Life Church and in the amount of $35, was transmitted to the Modesto organization by petitioners during their 1980 *81 taxable year.[3] The face of the check bears the notation that it represents payment of "donation/fees." When questioned by the Court, Mr. Gaster testified that $6 of the total $35 represented payment of a quarterly bookkeeping fee charged by Modesto and that the remaining $29 represented a donation to the Modesto organization for which petitioners received no financial or economic benefits. This $35 check was not a part of the $8,010 claimed by petitioners as a charitable contribution deduction on their 1980 return (Form 1040). At trial, Mr. Gaster claimed that all withdrawals from the church account were pursuasnt to resolution of the officers of ULC-H. No such resolutions were produced or offered into evidence, nor does the record disclose the identity of the officers of ULC-H. On their 1980 joint Federal income tax return, petitioners reported a combined gross income of $28,921.64, primarily Mr. Gaster's Government salary of $28,100.80 and small amounts of interest income and a refund of state taxes. *82 Mr. Gaster listed his occupation as that of an analyst; [4] Mrs. Gaster's as that of housewife. The Form W-2 attached to petitioners' 1980 tax return disclosed that during 1980 Mr. Gaster was employed by the National Aeronautics & Space Administration, Langley Research Center, Hampton, Virginia. On the Schedule A attached to their 1980 tax return, petitioners claimed a charitable contribution deduction in the amount of $8,010, representing the checks drawn on their credit union account and deposited by petitioners into the church account during 1980. Attached to petitioners' 1980 tax return was a document entitled "Annual Statement Of Contributions For The Year Of 1980" (hereinafter the contributions receipt), *83 purportedly signed by Bishop R. E. Imbeau as vice-president of Modesto and ostensibly acknowledging a contribution to Modesto during 1980 by petitioners in the amount of $8,010. In the statutory notice of deficiency issued to petitioners for their 1980 taxable year, respondent disallowed in full the $8,010 charitable contribution deduction claimed by petitioners and determined a deficiency in and a negligence addition to their tax. During the discovery proceedings in this case, respondent's counsel furnished Mr. Gaster with a copy of Murphy v. Commissioner,T.C. Memo. 1983-59, and shortly before the trial of this case, at the Court's request, he supplied Mr. Gaster with a copy of this Court's opinion in Davis v. Commissioner,81 T.C. 806 (1983) (on appeal 9th Cir. June 25, 1984). At the beginning of the trial, Mr. Gaster acknowledged that he had read the Davis opinion. OPINION Section 170(a) allows as a deduction any charitable contribution that is made during the taxable year. However, deductions are a matter of legislative grace, and taxpayers must satisfy the specific requirements of the deductions they claim. Deputy v. du Pont,308 U.S. 488 (1940); *84 New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Taxpayers bear the burden of proving their entitlement to the deductions they claim. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. These rules apply with equal force to deductions claimed for charitable contributions. Davis v. Commissioner,supra,81 T.C. at 815. The main thrust of petitioners' argument appears to be that the claimed contribution of $8,010 represents amounts paid to the Modesto organization itself, and not to ULC-H as a separate entity. The facts of record wholly refute this argument. Indeed, the parties have stipulated that the entire $8,010 claimed as a charitable contribution deduction by petitioners was made in the form of checks drawn on their credit union account, payable to and deposited in the churchaccount. Petitioners had the sole signatory authority over the church account. The only evidence offered to support petitioners' claim that the $8,010 was actually paid to the Modesto organization is the contributions receipt attached to their 1980 joint return, which was not admitted *85 into evidence for the truth of the matters asserted therein because of its hearsay character and because of its lack of probative value. See Davis v. Commissioner,supra,81 T.C. at 814-815. [5] The record simply does not support petitioners' argument that the $8,010 claimed as a charitable contribution deduction represents amounts actually paid to the Modesto organization.
Petitioners also apparently argue that ULC-H is a branch or subpart of the Modesto organization and is thereby entitled to the benefits of the specific tax exemption held by Modesto during the year in issue. This argument must also fail. This Court has previously held that such exemption was not a group exemption and that a charter organization or Chapter such as ULC-H does not come within the specific exemption held by the Modesto organization. Davis v. Commissioner,supra,81 T.C. at 815. [6] Whether labeled as "charters," "congregations," or some other term, the various groups receiving charters from the Modesto *86 organization are separate and distinct therefrom and are not entitled to the benefit of its tax-exempt status.
Petitioners also make a rather weak argument that ULC-H itself was a qualified recipient of deductible charitable contributions, entitling petitioners to a deduction for the $8,010 they withdrew from their credit union account and deposited into the church account during 1980. This argument must fail as petitioners have failed to meet virtually every test of section 170(c)(2). [7]
*87 First, petitioners' dominion and control over the church account precludes a finding that they have made "charitable contributions" to ULC-H within the meaning of section 170(c). See Davis v. Commissioner,supra,81 T.C. at 817 and cases cited therein. Petitioners possessed sole signatory authority over the church account and freely wrote checks thereon to pay expenses of a personal nature.While petitioners claim that all church expenditures were authorized by resolutions of ULC-H's officers, no such resolutions were produced at trial, the only evidence on this point consisting of Mr. Gaster's self-serving, wholly uncorroborated testimony to which we give little weight. The fact that petitioners retained control of and derived personal benefit from the church account precludes a finding that a "charitable contribution" within the meaning of section 170(c) was made. Second, petitioners have introduced no documentary evidence and only a minuscule amount of testimony [8] regarding the organization or operation of ULC-H, nor have they presented any evidence as to the distribution of its assets upon dissolution. See Davis v. Commissioner,supra,81 T.C. at 817; *88 Calvin K. of Oakknoll v. Commissioner,69 T.C. 770, 773 (1978), affd, without published opinion 603 F. 2d 211 (2d Cir. 1979), cert. denied 444 U.S. 872 (1979); sec. 1.501(c)(3)-1, Income Tax Regs. Petitioners have completely failed to provide the evidence necessary to prove that ULC-H was "organized and operated exclusively for religious * * * purposes." Sec. 170(c)(2)(B). Finally, the record clearly establishes that the "net earnings" of ULC-H inured to petitioners' benefit. Sec. 170(c)(2)(C). See Davis v. Commissioner,supra,81 T.C. at 818; Miedaner v. Commissioner,81 T.C. 272 (1983); McGahen v. Commissioner,76 T.C. 468, 482-483 (1981), affd. without published opinion 720 F. 2d 664 (3d Cir. 1983). Petitioners drew checks on the church account in payment of the mortgage on their home, utilities, and fuel, in addition to numerous checks *89 made payable to petitioners and allegedly representing payment of "expenses" of an undisclosed nature. Expenditures of the type in question here would normally be considered personal living expenses and we are unpersuaded by petitioners' attempt to transform them into valid church expenditures. See Davis v. Commissioner,supra,81 T.C. at 818. Petitioners have not demonstrated that the $8,010 claimed as a charitable contribution deduction on their 1980 return represented actual contributions to the Modesto organization, nor have they demonstrated that the actual recipient of such funds, ULC-H, was a qualified recipient of deductible charitable contributions under section 170(c)(2). It follows that respondent's disallowance of this deduction must be sustained. However, the evidence produced at trial disclosed that petitioners did draw one check on the church account during 1980 which was in fact sent to the Modesto organization and which was not a part of the $8,010 claimed as a charitable contribution deduction on petitioners' 1980 return. That check was in the amount of $35, $6 of which represented a quarterly payment of bookkeeping fees to Modesto, *90 the remainder allegedly representing a donation to Modesto for which no benefits or services were received by petitioners. While respondent questioned whether this $29 amount was actually a donation to Modesto for which no benefits were received, in this instance we accept Mr. Gaster's testimony that it was. As the Modesto organization enjoyed tax-exempt status under section 501(c)(3) during the year in issue, petitioners may deduct charitable contributions actually made thereto. Accordingly, petitioners are entitled to deduct this $29 contribution under section 170 for their 1980 taxable year. [9]
Before concluding our discussion of the contributions issue, we will briefly address the First Amendment claims raised by petitioners. We note at the outset *91 that we have not herein addressed the issue of whether ULC-H was in fact a "church" within the legal meaning of that term (Cf. Chapman v. Commissioner,48 T.C. 358 (1967); American Guidance Foundation v. United States,490 F. Supp. 304 (D. D.C. 1980)), nor need we address the sincerity of petitioners' beliefs. Assuming, without deciding, thatULC-H was a "church," it is clear that petitioners' First Amendment claims must fail. The provisions of section 170(c) in no way interfere with petitioners' right to the free exercise of religion. Their alleged religious activities are not being taxed. The free exercise clause does not require the Government to subsidize such activities. See Church of Scientology of California v. Commissioner,83 T.C. 381, 458, slip op. at 117 and cases cited thereat (filed Sept. 24, 1984); Graham v. Commissioner, 83 T.C.    , slip op. at 10-11 (filed Oct. 15, 1984). Nor do the provisions of section 170(c) violate the establishment clause of the First Amendment. See Church of Scientology of California v. Commissioner,supra,83 T.C. 460-464, slip op. at 120-127 and *92 cases cited therein; Graham v. Commissioner,supra, 83 T.C.    , slip op. at 11-13. Petitioners' religious beliefs and the religious doctrines of Modesto or petitioners' ULC-H chapter are irrelevant to our decision. Petitioners remain free to espouse their religious doctrines and to solicit support for their cause. As the Court pointed out in United States v. Holmes,614 F. 2d 985, 989 (5th Cir. 1980), petitioners "remain unimpeded in the cerebral sphere." However, when they seek deductions for charitable contributions, they must satisfy the express requirements of section 170, as must all other taxpayers. (See sec. 1.170A-9, Income Tax Regs. See generally Miedaner v. Commissioner,supra;McGahen v. Commissioner,supra.) They have not done so here. [10]
*93 Respondent also determined that petitioners are liable for the section 6653(a) addition to tax for negligence or intentional disregard of rules and regulations. Petitioners bear the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972); Rosano v. Commissioner,46 T.C. 681, 688 (1966). We have repeatedly sustained the section 6653(a) addition in cases of this type. See Davis v. Commissioner,supra,81 T.C. at 820-821 and cases cited therein at n. 12. Mr. Gaster struck us as a reasonably intelligent individual. He is a well-compensated Federal employee. The same legal standards are applied to Federal employee as to any other taxpayers. Certainly, a Federal employee, whose salary is paid by all of the taxpayers of this country, must at least be held to the same standard of conduct as any other taxpayer. We do not accept petitioners' argument that they sincerely thought they could claim charitable contribution deductions for amounts "contributed" to ULC-H but then subsequently used by them to pay part of their personal living expenses.We are satisfied that the negligence addition is *94 amplyjustified under the facts of this case. [11]
*95 To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. The Modesto organization was determined to be tax exempt under section 501(c)(3) in Universal Life Church, Inc. v. United States,372 F. Supp. 770↩ (E.D. Cal. 1974). We note that the Internal Revenue Service has recently withdrawn its recognition of the tax-exempt status of the Modesto organization. See Internal Revenue Service News Release, SF 84-32, dated August 28, 1984.
3. Although the back of the check was not offered into evidence, the check was apparently deposited into a separate bank account maintained by the Modesto organization.↩
4. Also attached to petitioners' 1980 return was a copy of Form 4029, Application for Exemption From Tax on Self-Employment Income and Waiver of Benefits, and a Form SS-4, Application for Employer Identification Number.Both forms were signed by Mr. Gaster as pastor of ULC-H. The Form 4029 was dated March 19, 1981; the Form SS-4 was dated March 20, 1981. The record does not reveal whether either application was acted upon by the Internal Revenue Service.↩
5. See also Owens v. Commissioner,T.C. Memo. 1982-671 and Mustain v. Commissioner,T.C. Memo. 1982-670↩.
6. See also Bradfield v. Commissioner,T.C. Memo. 1984-481; Kent v. Commissioner,T.C. Memo. 1984-451; Hoskinson v. Commissioner,T.C. Memo. 1984-400; Hodges v. Commissioner,T.C. Memo. 1984-385; Johnson v. Commissioner,T.C. Memo. 1984-164; Leslie v. Commissioner,T.C. Memo. 1984-61. See also the cases cited in Davis v. Commissioner,81 T.C. 806, 815↩ at n. 9 (1983), (on appeal 9th Cir. June 25, 1984).
7. As in effect during the year in question, section 170(c) provided in pertinent part: (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * *↩
8. At trial, Mr. Gaster mentioned only that ULC-H had made contributions to the Battered Women's League of Virginia without any reference to when such donations allegedly occurred, nor the frequency or amount thereof.↩
9. At the close of trial, respondent's counsel broached the issue of whether petitioners would be the proper party to claim this deduction, inasmuch as the check was drawn on the church account, and was therefore ostensibly made by ULC-H. In our opinion, the pervasive dominion and control petitioners exercised over the church account would preclude an argument that this donation was made by anyone other than petitioners.↩
10. In their trial memorandum, petitioners also asserted that respondent had violated their "rights" under section 7605(c).This claim is without merit. See sec. 7605(c), last sentence; see also sec. 301.7605-1(c)(3), Income Tax Regs.↩ Petitioners also raised several other frivolous arguments in their trial memorandum that we summarily reject as lacking sufficient merit to warrant discussion.
11. We have also considered whether damages should be awarded to respondent pursuant to section 6673 on the Court's own motion, particularly since petitioners persisted in their arguments even after the Court's earlier opinions rejecting these same arguments had been brought to their attention. However, under the terms of section 6673 as it read when this case was filed with the Court, we cannot find that the proceedings were instituted "merely" for delay. The new section 6673 now provides: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. * * * The provisions of section 6673 were amended by section 292(b), Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, 574; applicable to any action or proceeding commenced in the Tax Court after December 31, 1982, or pending therein on November 15, 1984. See sec. 292(e) of TEFRA, supra,↩ 96 Stat. at 574, as amended by sec. 160 of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 696. Petitioners just barely escaped being subject to the amended version of section 6673.