DUANE M. & PRISCILLA P. WEAVER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weaver v. Commissioner
Docket No. 13737-83.
United States Tax Court
T.C. Memo 1985-473; 1985 Tax Ct. Memo LEXIS 160; 50 T.C.M. (CCH) 1020; T.C.M. (RIA) 85473; September 10, 1985. *160 Held: Petitioners received unreported income of $800 during 1979; petitioners are not entitled to a charitable contribution deduction; and petitioners are liable for an addition to tax under section 6653(a). Frank L. Thiemonge, III, for the petitioners. Marsha Yowell, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1979 in the amount of $1,493.00 and an addition to tax pursuant to section 6653(a) [1] in the amount of $74.65. The issues before us for consideration are: (1) Whether petitioners received unreported income during 1979; (2) whether petitioners are entitled to a charitable deduction taken on their 1979 return; and (3) whether petitioners are liable for an addition to tax for 1979 pursuant to section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of facts and exhibits attached thereto are incorporated *161 herein by reference. Petitioners resided in Prattville, Alabama, at the time their petition was filed. During 1979 petitioner Duane M. Weaver was employed full-time as a truck driver and earned $16,156.22 therefrom. Petitioner Priscilla P. Weaver, his wife, was not employed during 1979. Mrs. Weaver's father, James Phillips, who had attended a divinity school and at some time had been a licensed minister with the United Pentecostal Church, read an advertisement of the Universal Life Church in a magazine during 1978. He applied to become a ULC member and "minister" and established his own local chapter of the ULC at his home in Prattville, Alabama (Prattville ULC). He showed petitioners an article about ULC and suggested that they also become members and ministers. Thereafter, petitioners decided to start their own church as well. After sending applications to the Universal Life Church of Modesto, California (ULC Modesto), they became ULC members and simultaneously also became "ministers." Neither petitioner previously had attended any seminary or religious school. ULC Modesto sent them a "Charter," dated October 31, 1978, purportedly establishing a ULC congregation at Hope Hull, *162 Alabama (Weaver ULC), which at that time was petitioners' place of residence. Phillips was named Secretary of the Board of Trustees of the Weaver ULC. Mrs. Weaver was named Treasurer, although she did not collect and disburse funds. Petitioners held the titles of Secretary and Treasurer of the Board of Trustees of Phillips' Prattville ULC. Phillips handled the funds of both the Weaver ULC and the Prattville ULC. Meetings of the "Boards" of the two local ULC's were held simultaneously, and all Board decisions were unanimous. Neither petitioners nor Phillips had met or been examined by anyone from the ULC Modesto before their "charters" were issued or certificates evidencing their status as "ministers" were issued. They were not advised by the ULC Modesto as to how the funds received by the Weaver ULC were to be spent. They maintained no local membership roster, and there were no registered members of the local congregation. Friends and neighbors--approximately 5 to 14 in number--attended meetings held on most [2] Sunday afternoons in petitioners' home, and either one of petitioners or Phillips spoke on topics of their choice. Mrs. Weaver supervised a "Sunday school" for the children *163 of the people who came to the meetings. Some of those who attended the weekly meetings contributed money to petitioners' "church," and amounts so contributed in 1979 were between $500 and $900. These funds were placed in a cash box which was marked with the letters "ULC" and was kept at Phillips' house. Petitioners at all times had complete access to the box and its contents. In addition to these funds, on numerous occasions during 1979, petitioners gave a total of $7,830 to Phillips to place in the Weaver ULC cash box. The funds so "donated" never were--nor were they intended to be--sent to ULC Modesto but were to be used solely by petitioners. To the extent that any detailed quarterly or monthly "church" reports were maintained by petitioners or Phillips, they were mailed to the Modesto ULC. No copies were retained by petitioners or Phillips or produced at trial. During 1979, petitioners moved from Hope Hull to Montgomery, Alabama, and received approval from Modesto ULC to move the Weaver ULC to Montgomery. Later petitioners merged the Weaver ULC *164 with Phillips' PrattvilleULC. During 1979, at Phillips' suggestion, petitioners obtained $5,380 from the Weaver ULC cash box as a "housing allowance," $1,200 as reimbursement for medical and dental expenses, [3] *165 and a few hundred dollars for other expenses, such as refreshments, and supplies to make toys and decorations for adults and children attending "services" at petitioners' home. Petitioners also obtained an unspecified amount of money from the cash box to drive and maintain a car that had been given to petitioners by Phillips and thereafter "donated" by petitioners to their "church." This car was used by petitioners and Phillips, although the record does not reveal whether it was used solely in connection with Sunday services or for petitioners' personal purposes as well. The car was registered under the name Universal Life Church, Incorporated with the Weaver ULC address. Because it was in bad shape and could not be adequately repaired, petitioners and Phillips gave the car away. Phillips prepared petitioners' 1979 tax return which reported income of $16,156, representing Mr. Weaver's earnings as a truck driver. On the return petitioners claimed a charitable deduction of $7,935. Petitioners did not report as income any of the money received from their "church" for a housing allowance, medical expenses or other personal expenses, nor did they report as income any money received from those in attendance at the weekly meetings. On April 12, 1983, respondent determined a deficiency in petitioners' 1979 tax, disallowing the charitable contribution deduction because it had not been shown that the donation was paid in 1979 or that the requirements of section 170 had been met, e.g., that the donation was made to a qualifying organization under section 501(c) or that petitioners had not derived personal benefit from the net earnings of such organization. [4]
After trial, respondent filed *166 a Motion to Conform Pleadings to Proof and, with the Court's permission, filed an amended answer in which he contended for the first time that petitioners received unreported income from the Weaver ULC during 1979 in the amount of $5,300 for a housing allowance, $1,200 for medical and dental expenses, and $900 for other personal expenses. ULTIMATE FINDINGS OF FACT Petitioners received $800 in unreported income during 1979. Petitioners did not part with control over the funds they purportedly donated to the Weaver ULC during 1979. OPINION Unreported Income
The first issue for decision is whether petitioners received income during 1979 that they did not report as such on their 1979 return. Because this issue was raised for the first time by respondent in his amended answer, respondent bears the burden of proof. Rule 142(a). We choose to analyze respondent's position in two parts: First, he contends that the $5,300 received by petitioners as a "housing allowance" and the $1,200 received as reimbursement for medical and dental expenses constitute income under the broad language of section 61 that "gross income means all income from whatever source derived" and that no portion of the *167 housing allowance warrants exclusion under section 107 as a parsonage allowance. Second, he asserts that petitioners had an additional $900 in unreported income from funds contributed by others to the Weaver ULC. With respect to the first position, respondent has not met his burden. We are not persuaded either from the testimony or from respondent's brief that petitioners have actually received anything from this aspect of the arrangement. In our view, they have done nothing more than transfer money from their pockets to the "ULC" cash box, which at all times was under their control, in an effort to manufacture a charitable contribution deduction and then to spend the contents of that box at will to pay their personal bills. Thus, these funds were still owned by petitioners while they were in the "ULC" cash box. That being the case, while we certainly do not condone such behavior, we do not see how the personal use of those funds by petitioners to pay their mortgage and their medical and dental expenses can constitute additional income to petitioners, particularly where those funds in all probability came from Mr. Weaver's wages as a truckdriver, which were reported as income on *168 petitioners' 1979 return. [5] In view of our holding on this aspect of the income issue, we need not address the question of whether the housing allowance constituted a parsonage allowance excluded under section 107.
With respect to the donations from others, we reach the opposite conclusion. By petitioners' own testimony, between $500 and $900 was contributed by some of those in attendance at the Sunday meetings, which funds were placed in petitioners' "ULC" cash box. These funds were at all times within petitioners' easy access, under their control, and could be used by petitioners according to their sole discretion. Thus, these funds constituted income to petitioners. As to the amount, Mrs. Weaver testified that she believed that it was something less than $900, and, using our best judgment, we have found that approximately *169 $800 was so collected during 1979. This amount should have been reported as income by petitioners on their 1979 return. Charitable Deduction
The next issue is whether petitioners are entitled to the charitable deduction taken on their 1979 return. Petitioners bear the burden of proof. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Section 170(a) provides that there shall be allowed as a deduction any "charitable contribution" as that phrase is defined in section 170(c), payment of which is made within the taxable year. Section 170(c) provides in pertinent part that-- * * * the term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund or foundation-- * * * (B) organized and operated exclusively for religious * * * purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *. Petitioners have failed in several respects to satisfy their burden of showing that they made any "charitable contribution" during 1979. First, petitioners did not part with control over the funds allegedly contributed and thus they have not made a contribution *170 or gift to another. The record is clear that no restraints were placed upon petitioners in their use of the purportedly donated funds, either by the ULC Modesto in granting petitioners their charter or by Phillips who had joint control over the funds with petitioners. In order for a legitimate gift to have been made, the purportedly donated property must have been placed outside the control of the donor. [6] As discussed previously, it seems evident from this record that petitioners simply placed some of their funds into a "ULC" cash box and then removed those funds at will when needed for personal expenses. Second, even if we did find that petitioners actually made a gift, they have not met their burden of proving that the contributions were made to a proper donee. They contend essentially that all of their purported contributions were made to ULC Modesto. If this were true, then any donations actually made would qualify for a charitable deduction, since the ULC Modesto qualified as an exempt organization in 1979. [7] Petitioners appear to *171 equate the placing of funds in their "ULC" cash box with a contribution to the ULC Modesto. However, none of these funds ever were actually sent to the ULC Modesto and were intended to be used solely by petitioners either personally or for their local congregation activities. This Court has repeatedly held that exemptions for parent churches do not extend to autonomous local chapters or congregations. Davis v. Commissioner,81 T.C. 806, 815 (1983), affd. 767 F.2d 931 (9th Cir. 1985). [8] It is therefore incumbent upon petitioners to show that the Weaver ULC met the requirements of section 170(c). There can be no doubt that the Weaver ULC fails to meet the requirement in section 170(c) *172 that no part of its net earnings may inure to the benefit of any private shareholder or individual. Most if not all [9] of the purportedly donated funds were used by petitioners for purely personal expenditures, such as mortgage payments, utilities, medical and dental expenses, refreshments, and toys.Accordingly, the Weaver ULC does not constitute a proper donee, and petitioners were not entitled to a charitable deduction for the funds they placed in the "ULC" cash box. Section *173 6653(a) Addition to Tax
The final issue is whether petitioners are liable for an addition to tax under section 6653(a). Petitioners bear the burden of proof. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972); Rule 142(a). Petitioners presented no evidence to show nonnegligent behavior and, to the contrary, much of petitioners' involvement with the ULC apparently was designed to manufacture tax deductions and to avoid paying taxes on money received as income. Accordingly, petitioners are liable for the section 6653(a) addition to tax. [10]
Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sometimes petitioners attended meetings at the PrattvilleULC, in which case no meeting was held at the Weaver ULC on that Sunday.↩
3. Some of the medical bills incurred by petitioners during 1979 were covered and paid for by medical insurance, and it is unclear whether any portion of the $1,200 they received from the ULC cash box was for those covered medical expenses.
4. The statutory notice also disallowed part of an interest expense deduction for lack of substantiation. Petitioners later provided respondent with adequate proof of the amount so disallowed, and this issue has been resolved by stipulation.↩
5. Thus, this is not a situation such as was present in Lynch v. Commissioner,T.C. Memo. 1980-464↩, affd. without published opinion (1st Cir. 1981), where the taxpayer attempted to avoid paying taxes on money he received as compensation for services on the ground that it was paid not to him personally but purportedly had been assigned to a church he had organized.
6. See Beauvais v. Commissioner,T.C. Memo. 1985-204. See also Davis v. Commissioner,81 T.C. 806, 817 (1983), affd. 767 F.2d 931↩ (9th Cir. 1985).
7. Under date of September 4, 1984, the Internal Revenue Service revoked its prior determination that the Universal Life Church, Inc. was a qualified organization under sec. 170(c)(2). Announcement 84-90, 1984-36 I.R.B. 32↩. 8. See also Gaster v. Commissioner,T.C. Memo. 1984-590; Bradfield v. Commissioner,T.C. Memo. 1984-481; Kent v. Commissioner,T.C. Memo. 1984-451; Hoskinson v. Commissioner,T.C. Memo. 1984-400; Johnson v. Commissioner,T.C. Memo. 1984-164; Leslie v. Commissioner,T.C. Memo. 1984-61↩.
9. While it may well be that some small portion of expenses may have been attributable to meetings actually held in petitioners' home, by petitioners' own testimony such meetings were held for a couple of hours once a week at most. Thus, the vast majority of these expenses were totally unrelated to the local congregation activities and inured to petitioners' benefit. See McGahen v. Commissioner,76 T.C. 468, 482-483 (1981), affd. without published opinion 720 F.2d 664↩ (3d. Cir. 1983). Even if we assume that the Sunday meetings of the Weaver ULC constituted the meetings of an exempt church, and we do not, petitioners have failed to provide any evidence on which to make a determination of the amount of funds so used.
10. We considered imposing damages against petitioners pursuant to section 6673 but, giving petitioners the full benefit of any doubt, determined not to make such award in this case. However, petitioners should bear in mind in connection with any further proceeding which they may institute in this Court that we are authorized to impose damages in an amount not in excess of $5,000 for proceedings instituted or maintained primarily for delay or where the taxpayers' position is frivolous or groundless.↩