T.C. Summary Opinion 2006-9

UNITED STATES TAX COURT

NORMAN JOHN HAAS III AND SUSAN RENEE HAAS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1234-05S.                    Filed January 26, 2006.

Norman John Haas III and Susan Renee Haas, pro sese.

<u>Kelly M. Davidson</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code as in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined for 2001 a deficiency in petitioners' Federal income tax of $3,015 and an accuracy-related penalty under section 6662 of $603.

Petitioners concede their deductions for: (a) Medical expenses; (b) personal property taxes of $126; (c) a charitable contribution of $5,000 worth of numismatic items, and $4,106 in carryover contributions from a prior year; and (d) "asset protection expense". Respondent concedes that petitioners are entitled to deductions for real estate taxes of $849 and a charitable gift of $5,000 worth of philatelic items.

The issues for decision are: (1) Whether petitioners are entitled to itemized deductions for (a) additional charitable gifts in cash and in kind, and (b) a casualty or theft loss of $5,679, and (2) whether petitioners are liable for the accuracy-related penalty under section 6662 due to negligence.

The stipulated facts and exhibits received in evidence are incorporated herein by reference. At the time the petition was filed, petitioners resided in Phoenix, Arizona.

## Background

Petitioners were married in 1996 and "combined two adult households into one small house." Norman John Haas III (petitioner), worked for Honeywell International, Inc., and Susan Renee Haas was employed as a registered nurse during 2001.

Petitioners' Charitable Gifts

On their Federal income tax return for 2001, petitioners deducted on Schedule A, Itemized Deductions, gifts to charity of $15,663. Included in the total was $300 as "gifts by cash or check" and $11,347 as gifts "other than by cash or check".

Petitioners also included with their return four Forms 8283, Noncash Charitable Contributions. Two of the Forms 8283 list donations to the Salvation Army valued at $500 each on five dates, consisting of "Misc. Antiques: Furniture, Toys, Games, Signs, Pottery, China, Glassware, Etc." A third form lists "Sun Cities Animal Rescue" as the donee also of "Misc. Antiques: Furniture, Toys, Games, Signs, Pottery, China, Glassware, Etc.", and Goodwill as the donee of "Like New TV & 5 Bags of Fashon [sic] Clothes, Like New Coutch [sic] & 2 Chairs & 5 Boxes Household Goods". As with the other two forms, the latter lists donations on five dates, three valued at $500, one at $300, and one at $200. The fourth Form 8283 relates to philatelic and numismatic gifts on which the parties have come to agreement.

Petitioners' Casualty or Theft Loss

Petitioners also deducted on Schedule A casualty and theft losses of $5,679. Form 4684, Casualties and Thefts, which was included with petitioners' tax return, described the affected property as a 1991 Chevrolet Silverado Extra Cab pickup truck (truck). Petitioners reported on the form that the truck had a

cost basis of $20,000, a fair market value before the casualty or theft of $13,000, and a fair market value after the casualty or theft of $2,000.

Petitioner filed a report of a stolen vehicle on February 10, 2001, with the Phoenix Police Department. The report includes, along with other information, a valuation of the truck at $1,000 and states that the truck had been driven approximately 150,000 miles by the date of the theft. Other notations in the report indicate that there was a toolbox in the rear of the truck and that the vehicle was insured by "Allstate".

According to a supplemental police report on the incident, petitioners' truck was recovered on February 12, 2001. In addition to repeating much of the information recorded in the original report, the supplemental report states that "The vehicle was stopped by the Border Patrol at the Sunsites Texaco Fuel Station. The vehicle has extensive damage to the exterior and interior. There was no toolbox in the bed of the truck."

The Certificate of Title for the truck indicates that the "Factory List Price" was $13,065, and that title was transferred to petitioner on June 14, 1994, with an odometer reading of 51,023 miles. Judging from other information in the Certificate of Title, petitioner is the third owner of the truck. A copy of the Cochise County Sheriff's Department Vehicle Removal Report

shows that the odometer indicated 152,759 miles when the truck was recovered.

The parties stipulated a portion of the January-April 2001 Edition of the Kelly Blue Book Older Car Guide 1981-1994 Models (Blue Book) that provides a range of values in 2001 for 1991 model trucks, including petitioners' make and model.

## Discussion

The Commissioner's determinations are presumed correct, and generally taxpayers bear the burden of proving otherwise. Rule 142(a)(1). Petitioners have neither argued for nor met the requirements for the application of section 7491(a). Because section 7491(a) is not here applicable, the burden of proof does not shift to the Commissioner.

## Petitioners' Charitable Gifts

Respondent denied petitioners' deduction for $300 of cash gifts for lack of substantiation. Petitioner testified that "me and my wife gave $25 in cash at that time to our church." He testified that they have no receipts and no letter from the church. "I mean you put the money in the basket", he further explained in his testimony.

Taxpayers are required to keep records of charitable contributions of money. Section 1.170A-13(a)(1), Income Tax Regs., requires substantiation for charitable contribution deductions. A taxpayer must maintain one of the following: (1)

A canceled check; (2) a receipt or letter from the donee charitable organization showing the name of the donee, and the date and the amount of the contribution; or (3) other reliable records showing the name of the donee, and the date and the amount of the contribution. Id. Petitioners' church donations do not meet the requirements of section 1.170A-13(a)(1), Income Tax Regs. See Blair v. Commissioner, T.C. Memo. 1988-581.

Where a charitable contribution is made of property other than money, section 170 allows a deduction of the fair market value of the property at the time of contribution. See sec. 1.170A-1(c)(1), Income Tax Regs. Petitioners bear the burden of proving both the fact that the contribution was made and the fair market value of the contributed property. See Rule 142(a); Zmuda v. Commissioner, 79 T.C. 714, 726 (1982), affd. 731 F.2d 1417 (9th Cir. 1984).

During the examination of petitioners' return, respondent asked them for an itemized list of the values of the items they donated. Petitioner testified that "And what I did at the time was I divided it by the number of gifts that I had given to these charities." He also testified that he was told that "certain receipts I should only claim $200 because that's the total value of those gifts, and some gifts I could have claimed up to $499", but that he did not know it at the time. Petitioner testified

that the gifts were valued based upon what one would pay at a thrift shop or rummage sale.

As evidence to substantiate their noncash gifts, petitioners introduced an itemized list of what petitioner testified to be the value of the gifts that they had claimed on their return. Petitioners' list gave only a general description of the items that they donated. One of the gift dates on petitioners' list, April 17, 2001, is not listed on the return. Petitioners claimed on their return $500 as the value for each of 10 gifts to the Salvation Army. Aside from the fact that the amounts on petitioners' list appear to be inflated, none of them are valued by petitioners at $500. Each of the three gifts to Sun Cities Animal Rescue is reported on the return at a value of $500, but on the list the gifts are valued at $736, $240, and $388. The values of the two Goodwill donations on the list, likewise, do not jibe with the amounts on the return.

While the Court believes that petitioners actually donated the items on the list, petitioners offered no corroborating evidence that the method they used to value the property was accurate. The Court finds that petitioners have failed to prove the value of their contributions. The Court further finds, using its judgment, that the fair market value of the donated property was $2,000. Petitioners are entitled to a deduction in that amount. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir.

1930); <u>Zmuda v. Commissioner</u>, <u>supra</u>; <u>Fontanilla v. Commissioner</u>, T.C. Memo. 1999-156.

<u>Petitioners' Casualty or Theft Loss</u>

Respondent did not allow petitioners any deduction for the damage caused as a result of the theft of their truck in 2001. Respondent's position is that petitioners' loss, if any, was covered by Allstate Insurance Company and that petitioners have failed to show that they were not reimbursed by Allstate. Respondent also argues that petitioners' claim of loss is excessive.

Losses may be deductible under section 165 to the extent that they are "not compensated for by insurance or otherwise." Petitioners produced at trial a letter from GEICO Insurance Company stating that petitioners were insured for the period during which the truck was stolen and that they filed no claims during that period. Respondent relies on the police report, stating that petitioners were covered by Allstate, and argues that petitioners did not provide evidence that they did not file a claim with Allstate. Petitioner testified that his only automobile insurer was GEICO, with whom there was no theft coverage for the truck in 2001.

Respondent's examining agent testified that petitioner told her during the examination that it was too expensive to have full coverage on the truck and that it was covered only by liability

insurance.  The Court accepts petitioners' evidence and finds that they were not compensated by insurance or otherwise for the loss from damage to the truck caused by theft.

In the case of an individual, section 165(c)(3) allows a taxpayer to claim as a deduction any loss from theft or casualty sustained during the taxable year.  The loss is allowed only to the extent that it exceeds $100 and the net casualty loss is in excess of 10 percent of the taxpayer's adjusted gross income. Sec. 165(h).  The amount of the loss allowable as a deduction is the lesser of (1) the difference between the fair market value of the property immediately before and immediately after the casualty, or (2) the adjusted basis of the property.  Helvering v. Owens, 305 U.S. 468 (1939); sec. 1.165-7(a)(2) and (b), Income Tax Regs.  The fair market value of the property immediately before and immediately after the casualty "shall generally be ascertained by competent appraisal."  Sec. 1.165-7(a)(2), Income Tax Regs.

Petitioners' case is made difficult to decide in their favor because they have no appraisals for the fair market value of the truck immediately before and immediately after it was damaged. Respondent argues for the use of the Blue Book as an appropriate guide for determining the value of petitioners' truck immediately before the casualty.  Using the Blue Book, respondent would value

the truck immediately before the casualty at between $4,218 and
$6,612.

Petitioners argue that, although generally useful, Blue Book
values in this case are inaccurate. Petitioner testified that
the truck was literally a showpiece. According to petitioner, it
had special paint, wheels, tires, and engine appearance items,
and extensive electronic gaming, music, lighting, and antitheft
systems. Petitioner testified that he entered the truck in
various car shows, but he presented no pictures, trophies, or
other evidence of having entered his truck into the shows.[1]
Petitioners did produce receipts for the purchase of the
electronic gaming, music, lighting, and antitheft systems,
showing the total cost to be more than $16,000. The electronics,
however, were installed in the truck in 1994, 7 years before the
theft. The electronics would not have the same value in 2001 as
they did when new in 1994.

Even more difficult is determining the fair market value of
the truck after the casualty. Petitioners reported on their
return that the truck was only worth $2,000 after the theft. But
the record contains no explanation of the derivation of
petitioners' asserted valuation. Petitioners produced no
pictures of the damage to the truck. There is no insurance

---

[1]The mileage accumulated on the truck and the carrying of a
toolbox, without further explanation, is more suggestive of a
working truck than a show truck.

company estimate of damage and no detailed and coherent description of the damage by petitioners themselves. The police report states only that there was "extensive" damage to the interior and exterior of the truck. The notes of respondent's examining agent indicate that petitioners reported to her that, as a result of the theft, they repaired the frame and body of the truck and replaced the "stereo, glass, tires, engine, and seats".

Evidence of the cost of repair to damaged property is acceptable as evidence of loss if: (a) The repair was necessary to restore the property to its condition just before the casualty; (b) the repair costs are not excessive; (c) the repair does not exceed the damage; and (d) the value of the property after the repair does not, as a result of the repair, exceed the precasualty value. Sec. 1.165-7(a)(2)(ii), Income Tax Regs.

Petitioners introduced into the record evidence in the form of receipts for the repair and replacement of some items in connection with the theft of and damage to the truck in 2001. Most of the receipts represent expenditures for replacing the engine and tires of the truck. According to the supplemental police report, however, the Border Patrol "stopped" the stolen truck at a gas station. The Court surmises that the truck was being driven (with operating engine and tires) at the time it was "stopped".

Petitioners have offered no evidence to show that the replacement of the engine and tires of the truck was a result of theft damage rather than the 150,000 miles accumulated before the truck was stolen. See Newton v. Commissioner, 57 T.C. 245, 248-249 (1971); Leslie v. Commissioner, T.C. Memo. 1984-61. Nor have petitioners shown that the replacement of the engine and tires did not exceed the damage or cause the truck to be restored to a condition better than that which it was in immediately before the theft. See sec. 1.165-7(a)(2)(ii), Income Tax Regs. They provided no evidence regarding the replacement of the stereo and "glass". Among the receipts presented by petitioners, however, is one for $354.75 for the repair of the seats of the truck. The Court accepts the receipt as evidence of damage to the truck as a result of the theft, and the amount on the receipt is deductible to the extent permitted by section 165(h)(1) and (2).

The Accuracy-Related Penalty Under Section 6662

Section 7491(c) imposes the burden of production in any court proceeding on the Commissioner with respect to the liability of any individual for penalties and additions to tax. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); Trowbridge v. Commissioner, T.C. Memo. 2003-164, affd. 378 F.3d 432 (5th Cir. 2004).

In order to meet the burden of production under section 7941(c), the Commissioner need only make a prima facie case that

imposition of the penalty or addition to tax is appropriate. Higbee v. Commissioner, supra. Once the Commissioner meets his burden of production, the taxpayer must come forward with evidence sufficient to persuade a court that the Commissioner's determination is incorrect. Id. at 447.

Respondent determined that a section 6662 accuracy-related penalty is due with respect to petitioners' tax return for 2001. Section 6662 imposes a penalty equal to 20 percent of the portion of the underpayment attributable to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). The term "negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Respondent has carried his burden of production in this case by showing that petitioners failed to fully substantiate their itemized deductions in several categories.

The accuracy-related penalty will apply unless petitioners demonstrate that there was reasonable cause for the underpayment and that they acted in good faith with respect to the underpayment. Sec. 6664(c). Whether a taxpayer acted with reasonable cause and good faith depends on the pertinent facts

and circumstances.  McCallson v. Commissioner, T.C. Memo. 1993-528; sec. 1.6664-4(b)(1), Income Tax Regs.  Petitioners must show that they were not negligent.  Cluck v. Commissioner, 105 T.C. 324, 339 (1995).

Petitioners failed to establish that they were not negligent in failing to retain documentation for their itemized deductions.  They have failed to carry their burden of proof.  We sustain respondent's determination that they are liable for the accuracy-related penalty for 2001.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

under Rule 155.