T.C. Memo. 2003-164

UNITED STATES TAX COURT

JOHN PARKS TROWBRIDGE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SABRINA MARTIN, f.k.a. SABRINA L. TROWBRIDGE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 473-01, 474-01.          Filed June 4, 2003.


        R determined deficiencies in tax with respect to
Ps (H and W) for the years 1991-95, as well as
additions to tax under secs. 6651(a)(1) and 6654,
I.R.C., with respect to various of those years.  Ps
filed petitions for redetermination but failed to
appear at trial.  R moved for default judgment with
respect to the deficiencies in tax determined against
Ps for all years and the additions to tax determined
against H for the years 1991-93.  R proceeded to trial
on the issues of (1) the additions to tax determined
against W for all years, and (2) the additions to tax
determined against H for 1994 and 1995.

1. <u>Held</u>: R's motion for default judgment is granted.

2. <u>Held</u>, <u>further</u>, Forms 1040 and 1040EZ filed by Ps do not constitute valid Federal income tax returns.

3. <u>Held</u>, <u>further</u>, Ps are liable for the additions to tax at issue in the amounts determined by R, with minor adjustments.

4. <u>Held</u>, <u>further</u>, H and W are liable for penalties under sec. 6673, I.R.C., in the amounts of $25,000 and $15,000, respectively.

John Parks Trowbridge and Sabrina Martin, pro sese.

<u>M. Kathryn Bellis</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  These cases have been consolidated for purposes of trial, briefing, and opinion.  By notices of deficiency dated October 11, 2000 (the notices of deficiency), respondent determined deficiencies in, and additions to, each petitioner's Federal income taxes as follows:

John Parks Trowbridge (Dr. Trowbridge)

| | | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
|------|------------|------------------|-----------|
| 1991 | $6,533 | -- | $4 |
| 1992 | 9,492 | $1,380 | 222 |
| 1993 | 83,478 | 20,870 | 3,498 |
| 1994 | 121,075 | 30,269 | 6,283 |
| 1995 | 130,699 | 32,595 | 7,068 |

Sabrina L. Trowbridge (Ms. Martin[1])

|  | | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
| 1991 | $6,197 | $105 | -- |
| 1992 | 8,740 | 1,198 | $190 |
| 1993 | 74,612 | 18,653 | 3,126 |
| 1994 | 102,588 | 25,647 | 5,323 |
| 1995 | 111,266 | 27,679 | 6,000 |

Respondent has moved that petitioners be held in default with respect to the deficiencies in tax determined against them for all years and that Dr. Trowbridge be held in default with respect to the additions to tax determined against him for 1991, 1992, and 1993. In addition, respondent has moved for partial summary judgment in his favor with respect to the additions to tax determined against Dr. Trowbridge for 1994 and 1995 and the additions to tax determined against Ms. Martin for all years. Respondent has also asked the Court to impose a penalty on each petitioner under section 6673(a)(1) in the amount of $25,000. For the reasons that follow, we shall grant respondent's motions for default judgment, sustain (with minor adjustments) the additions to tax that are the subject of his motions for partial summary judgment, and impose penalties under section 6673(a)(1).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and

---

[1] During the years at issue, Ms. Martin was married to Dr. Trowbridge and was known as Sabrina L. Trowbridge. She is now known as Sabrina Martin, and we shall refer to her as Ms. Martin for all purposes in this report.

Procedure. For the sake of convenience, all dollar amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Preliminary Facts

At the time the petitions were filed in these cases, each petitioner resided in Harris County, Texas.

Petitioners were married to each other during the years at issue but filed separate returns for those years.

Dr. Trowbridge is a physician, and Ms. Martin is a nurse and administrative assistant who, during the years at issue, was sometimes employed by Dr. Trowbridge's professional corporation.

Both petitioners are calendar year taxpayers.

Respondent's examination with respect to Dr. Trowbridge's 1991, 1992, and 1993 taxable years commenced before 1998. Respondent's examinations with respect to Dr. Trowbridge's 1994 and 1995 taxable years and Ms. Martin's 1991 through 1995 taxable years commenced after July 1998.

Dr. Trowbridge's 1993, 1994, and 1995 Forms 1040

1993 Form 1040[2]

On November 26, 1996, Dr. Trowbridge mailed to the Internal Revenue Service (IRS) a Form 1040, U.S. Individual Income Tax Return 1993 (Dr. Trowbridge's 1993 Form 1040), which the IRS

---

[2] As discussed infra, Dr. Trowbridge's 1993 Form 1040 is relevant to the determination of whether he is liable for the sec. 6654 addition to tax with respect to his 1994 taxable year.

received on December 3, 1996.  On page 2 of Dr. Trowbridge's 1993 Form 1040, he reported tax of $92,494 but stated: "SEE ATTACHED DISCLAIMER STATEMENT--ADMITTED TAX LIABILITY IS ZERO".  The attached disclaimer statement (the 1993 disclaimer) reads in part as follows:

> The assessment and payment of income taxes is voluntary * * * John respectfully declines to volunteer concerning assessment and payment of any tax balance due on the return or any redetermination of said tax. Be it known that we, separately and together, therefore, deny tax liability and do not admit that the stated amount of tax on return, as calculated solely by reference to provided tables, is due and collectible. The tax return read as a whole shows no amount as being the tax and shows the tax to be zero and zero is the starting point in determining a deficiency or any other action involving this return.  * * *

> John has provided payment in the amount of $1,000 as a voluntary contribution.

The 1993 disclaimer is signed by Dr. Trowbridge and "Acknowledged in full agreement" by Ms. Martin.

Respondent determined a deficiency in Dr. Trowbridge's tax for 1993 of $83,478.

### 1994 Form 1040

On January 16, 1997, Dr. Trowbridge mailed to the IRS a Form 1040, U.S. Individual Income Tax Return 1994 (Dr. Trowbridge's 1994 Form 1040), which the IRS received on January 21, 1997.  On page 2 of Dr. Trowbridge's 1994 Form 1040, he reported tax of $170,144 but stated: "SEE ATTACHED DISCLAIMER STATEMENT--ADMITTED

TAX LIABILITY IS ZERO".  In substance, the attached disclaimer is identical to the 1993 disclaimer.

Dr. Trowbridge submitted to the IRS no other document purporting to be a return for 1994.

Respondent determined a deficiency in Dr. Trowbridge's tax for 1994 of $121,075.  The only payment made by Dr. Trowbridge for 1994 was $1,000 paid on January 21, 1997, with his 1994 Form 1040.

### 1995 Form 1040

On January 20, 1997, Dr. Trowbridge mailed to the IRS a Form 1040, U.S. Individual Income Tax Return 1995 (Dr. Trowbridge's 1995 Form 1040), which the IRS received on January 27, 1997.  On page 2 of Dr. Trowbridge's 1995 Form 1040, he reported tax of $133,977 but stated: "SEE ATTACHED DISCLAIMER STATEMENT--ADMITTED TAX LIABILITY IS ZERO".  In substance, the attached disclaimer is identical to the 1993 disclaimer.

Dr. Trowbridge submitted to the IRS no other document purporting to be a return for 1995.

Respondent determined a deficiency in Dr. Trowbridge's tax for 1995 of $130,699.  The only payment made by Dr. Trowbridge for 1995 was $1,000 paid on January 27, 1997, with his 1995 Form 1040.

Ms. Martin's 1991 Through 1995 Income Tax Filings

### 1991 Form 1040

On or around November 1, 1996, Ms. Martin mailed to the IRS a Form 1040, U.S. Individual Income Tax Return 1991 (Ms. Martin's 1991 Form 1040), which the IRS received on November 4, 1996. On page 2 of Ms. Martin's 1991 Form 1040, she reported tax of $5,203 and withholding of $19,640. She also stated: "SEE ATTACHED DISCLAIMER STATEMENT--ADMITTED TAX LIABILITY IS ZERO". The attached disclaimer refers to her but, in substance, is identical to the 1993 disclaimer.

Ms. Martin submitted to the IRS no other document purporting to be a return for 1991.

Respondent determined a deficiency in Ms. Martin's tax for 1991 of $6,197. The only payment made by Ms. Martin for 1991 was $100 paid on November 4, 1996, with her 1991 Form 1040.

### 1992 Form 1040

On or around November 1, 1996, Ms. Martin mailed to the IRS a Form 1040, U.S. Individual Income Tax Return 1992 (Ms. Martin's 1992 Form 1040), which the IRS received on November 4, 1996. On page 2 of Ms. Martin's 1992 Form 1040, she reported tax of $1,805 and withholding of $7,944. She also stated: "SEE ATTACHED DISCLAIMER STATEMENT--ADMITTED TAX LIABILITY IS ZERO". The attached disclaimer refers to her but, in substance, is identical to the 1993 disclaimer.

Ms. Martin submitted to the IRS no other document purporting to be a return for 1992.

Respondent determined a deficiency in Ms. Martin's tax for 1992 of $8,740. The only payment made by Ms. Martin for 1992 was $100 paid on November 4, 1996, with her 1992 Form 1040.

### 1993 and 1994 Tax Obligations

Ms. Martin did not file Federal income tax returns for either 1993 or 1994. She did not make any estimated tax payments for those years.

Respondent determined deficiencies of $74,612 and $102,588 in Ms. Martin's taxes for 1993 and 1994, respectively.

### 1995 Form 1040EZ

On or about January 20, 1997, Ms. Martin mailed to the IRS a Form 1040EZ, Income Tax Return for Singles and Joint Filers With No Dependents 1995 (Ms. Martin's 1995 Form 1040EZ), which the IRS received on January 21, 1997. On Ms. Martin's 1995 Form 1040EZ, she reported tax of $0, an earned income credit of $234, and withholding of $635. She also stated: "SEE ATTACHED DISCLAIMER STATEMENT--ADMITTED TAX LIABILITY IS ZERO". The attached disclaimer refers to her but, in substance, is identical to the 1993 disclaimer.

Ms. Martin submitted to the IRS no other document purporting to be a return for 1995.

Respondent determined a deficiency in Ms. Martin's tax for 1995 of $111,266.  The only payment made by Ms. Martin for 1995 was $100 paid on January 21, 1997, with her 1995 Form 1040EZ.

The Pleadings and Related Matters

The Petitions

In response to the notices of deficiency, both petitioners filed petitions on January 9, 2001.  In many respects, the petitions are identical.  Dr. Trowbridge's petition is 74 pages long, and Ms. Martin's petition is 75 pages long.  Although the petitions do assign error to respondent's determinations, for the most part, they make a convoluted argument that subjecting petitioners to the same rate of tax as Federal employees constitutes impermissible "disparate treatment".  Petitioners cite a variety of Code sections and regulatory materials to show that public employees and certain others receive benefits from the Federal Government that are not available to petitioners as "private independent contractors" or "private sector workers".  They state:

> In direct contrast to the private independent contractor, or non-government workers whose economic position, and rate of personal earnings are not fixed and guaranteed by statute, the rate instead is controlled by what the market place will bear and without any position fixed by statute.  This gives the government employees or officers a great personal and economic advantage over that afforded to the private independent contractor, or non-government workers, and as such creates a disparate or unequal treatment under the law, because the Internal Revenue Service administratively states that the private independent

contractors, or private sector workers pay [sic] must pay the same rate or percentage of tax on net income as do the government employees under Title 26 USC §§ 1, or 3, without affording these same government privileges, services, benefits, contributions, or funds.

They argue that either respondent has to afford them a lower, special tax rate or they must be afforded the same benefits as Federal Government employees:

it is the position of this petitioner, that there is within the Internal Revenue Code (IRC), a separate taxing statute with a reduced or compensatory rate of tax for the taxpayers who are "private independent contractors", or "private sector workers". If not, then this petitioner is entitled to receive the same compensation in benefits and economic protections as the federal employee, appointed or elected official, or corporate or partnership individuals.

Respondent's Motions for a More Definite Statement

In response to the petitions, respondent moved in each case for a more definite statement or to dismiss for failure to state a claim upon which relief can be granted. Following a hearing on respondent's motions, we declined to dismiss but concluded that the petitions contained frivolous and groundless allegations. We struck from the petitions all such allegations, which constituted the bulk of the petitions.

The Answers

On May 17, 2001, respondent filed his answers to the abridged petitions, denying all material allegations of fact made in support of the lone remaining assignment of error contained therein.

Standing Pretrial Order and Notice

On May 29, 2001, the Court issued its Standing Pretrial Order and Notice in each case, setting the cases for trial at the trial session of the Court commencing on December 3, 2001, in Houston, Texas.

Petitioners' Discovery Requests

On September 20 and 25, 2001, Ms. Martin and Dr. Trowbridge, respectively, served on respondent a request for admissions. Each request is over 140 pages in length (without attachments) and requests over 600 admissions.

On September 27, 2001, each petitioner served on respondent interrogatories and a request for production of documents. Each set of interrogatories is over 125 pages in length and contains over 500 interrogatories.

On October 4, 2001, respondent filed motions for protective orders with respect to the requests for admissions, interrogatories, and requests for production of documents served by petitioners. Respondent argued that such requests were not timely, addressed improper issues, and were intended to burden respondent unduly, waste his resources, and divert him from trial preparation. We asked petitioners to respond and, after considering their responses, granted respondent relief "substantially for the reasons stated in respondent's motions."

Petitioners' Dismissal Efforts

### Motions To Dismiss for Lack of Jurisdiction

On November 21, 2001, Dr. Trowbridge submitted "for the petitioners" a motion styled "Petitioner's Verified Challenge to Jurisdiction of the Court", which we filed in each case as a motion to dismiss for lack of jurisdiction. The motion "denies the existence of any contracts or commercial agreements which create an attachment of an equity relationship between the 'United States' and/or The State of Texas and Petitioner." The motion also states: "Petitioner has specifically forfeited, waived, rejected, declined, and refused to voluntarily accept any and all benefits, especially admiralty and limited debt liability benefits, from the 'United States' and its instrumentalities." Apparently on those bases, the motion then states: "Petitioner hereby gives formal notice to the Court of Petitioner's status as a nonjuristic person, a Texas state Citizen, and that, in such status, Petitioner squarely challenges and voids the jurisdiction of this Court." Petitioners claimed in the motion that we lack "in personam" jurisdiction and subject matter jurisdiction. We denied the motion.

### Motions To Dismiss

On November 23, 2001, Dr. Trowbridge submitted (and Ms. Martin signed "in full agreement") a motion styled "Petitioner's Notice of Withdrawal of Petition", which we filed in each case as

a motion to dismiss (the motions to dismiss) and denied.[3]  In those motions, petitioners reiterated their claims that we lack jurisdiction and stated that they wished to withdraw their petitions:  "Petitioner hereby gives Notice of <u>WITHDRAWAL</u> of the petition for review by the United States Tax Court.  This Notice of Withdrawal of petition makes moot, voids, and cancels all proceedings previously scheduled by this Court for action upon the petition filed in error."

Trial Session

These cases were called from the calendar at the Court's trial session commencing on Monday, December 3, 2001, in Houston, Texas.  On Friday, November 30, 2001, an employee of the Court Clerk's Office contacted petitioners and reminded them that they were expected to appear at the call of the calendar on Monday, December 3.  When, on that date, the cases were called from the calendar, petitioners failed to appear.  Counsel for respondent appeared and announced ready for trial.  The Court set the cases for trial on Tuesday, December 4, 2001, at 9:00 a.m., and directed the deputy trial clerk to contact petitioners by telephone and notify them of the date and time of the trial. When the cases were recalled from the calendar on December 4, for

---

[3]  To the extent petitioners were relying on grounds other than jurisdiction, a decision dismissing the proceedings would have been considered a decision sustaining the deficiencies determined by respondent.  See sec. 7459(d).  Since we did not believe that was the result petitioners intended, we denied the motions to dismiss.

trial, petitioners failed to appear. Counsel for respondent appeared and announced ready for trial. The deputy trial clerk reported that he had left messages for both petitioners as to the date and time of the trial. Respondent moved to dismiss for default in both cases and the Court set those motions for a hearing on Friday, December 7, 2001. The Court instructed respondent's counsel to arrange personal service of the petitioners, to inform them of the hearing. The Court heard one witness in support of respondent's case.

On Friday, December 7, 2001, the cases were recalled from the calendar for a hearing on respondent's motions to dismiss for default. Petitioners failed to appear. Counsel for respondent appeared and announced ready for the hearing. Internal Revenue Agent Marilyn MacIness testified that she had served each petitioner personally with notice of the hearing. The Court took respondent's motions to dismiss for default under advisement.


OPINION

I.  Motions To Dismiss for Default

Respondent has moved (1) that Dr. Trowbridge be held in default with respect to, and that a decision be entered in respondent's favor in the full amount of, the deficiencies in tax determined by respondent against Dr. Trowbridge for the years 1991 through 1995 and the additions to tax determined by

respondent against Dr. Trowbridge for the years 1991 through 1993, and (2) that Ms. Martin be held in default with respect to, and that a decision be entered in respondent's favor in the full amount of, the deficiencies in tax determined by respondent against Ms. Martin for the years 1991 through 1995. Petitioners object, respectively, to those motions (collectively, the default motions).[4]

In pertinent part, Rule 123(a) provides:

(a) <u>Default</u>: If any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, then such party may be held in default by the Court either on motion of another party or on the initiative of the Court. Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper * * *

Respondent argues that petitioners' failures to appear for the call of these cases on December 3, 2001, and at the trial of the cases on December 4, 2001, constitute defaults and that it is appropriate for the Court to enter default judgments against each with respect to the deficiencies and additions to tax that are the subject of the default motions.

---

[4] Although petitioners failed to appear at the hearing on the default motions, they did submit a document to the Court that day styled "Mandatory Judicial Notice of Petitioner's Refusal for Cause of Respondent's Motion for Default Judgment", which we filed in each case as an objection to the respective default motions.

Petitioners object to the default motions principally on the ground that each had withdrawn his or her petition (by the motions to dismiss, which we had denied).

We have no doubt that petitioners had knowledge of the call of these cases on December 3, 2001, and the recall of the cases on December 4 and 7, 2001. We assume that petitioners failed to answer those calls because they no longer wished to continue their cases in this Court; that is the position taken by them in the motions to dismiss (which we denied). We shall, therefore, hold each of them in default. We shall enter a decision against each petitioner that includes the full amount of the deficiencies in tax and additions to tax that are the subject of the default motions. That is appropriate since respondent had denied all material allegations of fact set forth in the petitions in support of the assignments of error and none of petitioners' filings has otherwise convinced us that respondent in any way erred in determining the deficiencies in tax and additions to tax that are the subject of the default motions.

II. Remaining Additions to Tax

A. Introduction

Respondent proceeded to trial on the issues of the additions to tax determined against Dr. Trowbridge for the years 1994 and 1995 and the additions to tax determined against Ms. Martin for the years 1991 through 1995 (collectively, the remaining

additions to tax) on account of the burden of production imposed on the Secretary by current section 7491(c) (hereafter section 7491(c).[5] As will be discussed, respondent has carried that burden.

B. Summary Adjudication Unnecessary

Respondent has moved for partial summary judgment in his favor with respect to the remaining additions to tax. Petitioners object, respectively, to those motions (collectively, the summary judgment motions).

A party may move for "summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy." Rule 121(a). "Summary judgment is a device used to expedite litigation and is intended to avoid unnecessary and expensive trials of 'phantom factual questions.'" Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). "The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact." Id.; see Rule 121(b). "The opposing party is to be afforded the benefit of all reasonable doubt, and any inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion for summary judgment." Espinoza v. Commissioner, supra at 416.

---

[5] We do not decide whether respondent was required to satisfy sec. 7491(c) in this default setting.

Respondent has moved for partial summary judgments, but, since there was a trial in these cases, at which respondent presented evidence pertaining to the remaining additions to tax, we need not determine whether the summary judgment motions satisfy the standards for summary adjudication.  We shall, therefore, deny the summary judgment motions (although we largely sustain respondent's substantive positions therein, as discussed below).

C.  Substantive Provisions

1.  Section 6651(a)(1)

Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to file a timely return (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect.  The amount of the addition is equal to 5 percent of the amount required to be shown as tax on such return for each month or fraction thereof during which such failure continues, up to a maximum addition of 25 percent for returns more than 4 months delinquent.  For these purposes, the amount required to be shown as tax on the return is reduced by any timely payments of the tax[6] and any credits which may be claimed on the return.  Sec. 6651(b)(1).

_____

[6]  In general, payment of income tax is due on the due date of the corresponding return, determined without regard to any filing extensions.  Sec. 6151(a).

## 2.  Section 6654

Section 6654 provides for an addition to tax in the event of an underpayment of a required installment of individual estimated tax.  As relevant to these cases, each required installment of estimated tax is equal to 25 percent of the "required annual payment", which in turn is equal to the lesser of (1) 90 percent of the tax shown on the individual's return for that year (or, if no return is filed, 90 percent of his or her tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return.  Sec. 6654(d)(1)(B)(i) and (ii).  The due dates of the required installments for a calendar taxable year are April 15, June 15, and September 15 of that year and January 15 of the following year.  Sec. 6654(c)(2).  For purposes of section 6654, an individual's tax consists of income tax and self-employment tax and is determined before the application of any wage withholding credit[7] (but after the application of other allowable credits).  Sec. 6654(f); see sec. 31.

There are two mechanical exceptions to the applicability of the section 6654 addition to tax.  First, as relevant to these cases, the addition is not applicable if the tax shown on the individual's return for the year in question (or, if no return is filed, the individual's tax for that year), reduced for these

_____

[7]  Under sec. 6654(g)(1), wage withholding credits are treated as payments of estimated tax.

purposes by any allowable credit for wage withholding, is less than $500.[8]  Sec. 6654(e)(1).  Second, the addition is not applicable if the individual's tax for the preceding taxable year was zero.  Sec. 6654(e)(2).

D.  Section 7491(c)

Section 7491(c) imposes the burden of production in any court proceeding (i.e., the burden of moving forward with evidence) on the Commissioner with respect to the liability of any individual for penalties and additions to tax.[9]  In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or addition to tax is appropriate; he need not negate the existence of any circumstantial defense such as reasonable cause.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001); H. Conf. Rept. 105-599, at 241 (1998), 1998-3 C.B. 747, 995.  Furthermore, section 7491(c) has no effect on the burden of proof (i.e., the burden of persuasion), Higbee v. Commissioner, supra at 446-447, which remains on petitioners in these cases, Rule

---

[8]  Effective for taxable years beginning after Dec. 31, 1997, the threshold amount is $1,000.  Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1202(a), 111 Stat. 994.

[9]  Sec. 7491(c) applies to court proceedings arising in connection with examinations commencing after July 22, 1998.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c)(1), 112 Stat. 727.  As referenced in our findings of fact, the additions to tax not included in the default motions (collectively, the remaining additions to tax) pertain to examinations commenced after July 1998.

142(a); cf. current sec. 7491(a) (shifting the burden of proof to the Commissioner in certain circumstances).

### E. Discussion

#### 1. Petitioners' Forms 1040 and 1040EZ

Respondent contends that the Forms 1040 and 1040EZ filed by petitioners with respect to the years at issue do not constitute valid returns.[10]  In Williams v. Commissioner, 114 T.C. 136, 143 (2000), we held that a disclaimer statement similar to the ones at issue in these cases rendered the Form 1040 to which it was attached invalid.  We see no reason to depart from the reasoning of that case here.  Accordingly, we conclude that Dr. Trowbridge's 1993-95 Forms 1040, and Ms. Martin's 1991-92 Forms 1040 and 1995 Form 1040EZ, are not valid returns.

#### 2. Respondent's Section 6651(a)(1) Determinations

As relevant to his section 6651(a)(1) determinations, respondent produced evidence that petitioners did not file valid Federal income tax returns for any of the years at issue. Respondent also produced evidence that neither petitioner made any timely payments of tax with respect to the years at issue.[11]

---

[10]  We address that contention separately because it is relevant to our analysis of both the sec. 6651(a)(1) and the sec. 6654 additions to tax asserted by respondent.

[11]  In his sec. 6651(a)(1) computations, respondent properly credited each petitioner with one-half of petitioners' aggregate wage withholding credit where applicable.  See sec. 6651(b)(1); sec. 1.31-1(a), Income Tax Regs. (rule for wage withholding credits of separately filing spouses domiciled in a community

(continued...)

Based on the foregoing, we conclude that respondent established a prima facie case that the determination of 25-percent additions to tax under section 6651(a)(1) with respect to Dr. Trowbridge for the years 1994 and 1995, and with respect to Ms. Martin for the years 1991-95, is appropriate, thereby satisfying section 7491(c). In the absence of any evidence refuting that prima facie case (such as reasonable cause or lack of willful neglect on the part of either petitioner), we conclude that petitioners are liable for such additions to tax. Except as noted below,[12] we also accept respondent's computation of the amounts of those additions as set forth in the notices of deficiency.

### 3. Respondent's Section 6654 Determinations

As relevant to his section 6654 determinations, respondent introduced into evidence Dr. Trowbridge's invalid return for 1993 in addition to the evidence of invalid and nonexistent returns discussed above in the context of his section 6651(a)(1) determinations. Respondent also produced evidence that, aside

---

[11](...continued) property State). Respondent also properly credited Ms. Martin with her earned income credit for 1995. See sec. 6651(b)(1).

[12] Respondent inexplicably based his 1992 sec. 6651(a)(1) computation for Ms. Martin on tax of $8,764 rather than the $8,740 amount of tax that appears elsewhere in the notice of deficiency issued to her. The correct amount of such addition shall be the subject of a Rule 155 computation.

from amounts withheld from wages,[13] neither petitioner made any timely payments of tax that could be applied against his or her required annual payments for the years at issue.

In the absence of valid returns, the applicability of the $500 de minimis exception to the section 6654 addition to tax discussed above is determined on the basis of each petitioner's tax (within the meaning of section 6654(f)) for the years at issue. See sec. 6654(e)(1). In light of the deficiency decisions that we shall enter against petitioners pursuant to our disposition herein of the default motions, neither petitioner qualifies for the $500 de minimis exception for any of the years at issue. The impending entry of those deficiency decisions also precludes the applicability of the section 6654(e)(2) exception (zero tax for preceding year) with respect to any of the years at issue.

Based on the foregoing, we conclude that respondent established a prima facie case that the determination of additions to tax under section 6654 with respect to Dr. Trowbridge for the years 1994 and 1995, and with respect to Ms. Martin for the years 1992-95, is appropriate, thereby satisfying section 7491(c). Absent any evidence refuting that prima facie

---

[13] As is the case with his sec. 6651(a)(1) computations, respondent properly credited each petitioner with one-half of petitioners' aggregate wage withholding credit where applicable. See sec. 6654(g)(1), supra note 7; sec. 1.31-1(a), Income Tax Regs., supra note 11.

case, we conclude that petitioners are liable for such additions to tax. Except as noted below,[14] we also accept respondent's computation of the amounts of those additions as set forth in the notices of deficiency.

## III. Section 6673(a)(1) Penalties

Respondent asks that we impose a penalty against each petitioner under section 6673(a)(1) in the amount of $25,000.

In pertinent part, section 6673(a)(1) provides:

SEC. 6673.  SANCTIONS AND COSTS AWARDED BY COURTS.

(a) Tax Court Proceedings.--

(1) Procedures instituted primarily for delay, etc.--Whenever it appears to the Tax Court that--

(A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,

(B) the taxpayer's position in such proceeding is frivolous or groundless, or

* * * * * * *

the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.

---

[14] Respondent inexplicably based his 1992 sec. 6654 computation for Ms. Martin on tax of $8,764 rather than the $8,740 amount of tax that appears elsewhere in the notice of deficiency. In his 1995 sec. 6654 computation for Ms. Martin, rather than reducing her 1995 tax by the amount of her 1995 earned income credit, respondent improperly treated that credit as a payment of estimated tax. See sec. 6654(f)(3) and (g)(1). The correct amounts of those additions to tax shall be the subject of Rule 155 computations.

The purpose of section 6673 "is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate." Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); see also Grasselli v. Commissioner, T.C. Memo. 1994-581 (quoting Coleman). A taxpayer's position is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law. E.g., Nis Family Trust v. Commissioner, 115 T.C. 523, 544 (2000). We need not find specific damages to invoke section 6673(a)(1); rather, that section is a penalty provision, intended to deter and penalize frivolous claims and positions in deficiency proceedings. Bagby v. Commissioner, 102 T.C. 596, 613-614 (1994).

Petitioners do not here argue for any change in the law, and there is no plausible argument that, as maintained in the disclaimers attached to their Forms 1040 and 1040EZ, the payment of income taxes is voluntary. E.g., Woods v. Commissioner, 91 T.C. 88, 90 (1988). Similarly, there is no plausible argument that, as maintained in the petitions, subjecting petitioners to the same rate of tax that applies to Federal employees constitutes impermissible disparate treatment. See Rogers v. Commissioner, T.C. Memo. 2001-20, affd. without published opinion 281 F.3d 1278 (5th Cir. 2001). Whatever legitimate arguments may underlie their assignments of error, petitioners have emphasized

frivolous arguments and, for that reason alone, deserve to have section 6673(a)(1) penalties imposed against them.

We are also convinced by petitioners' conduct that they both instituted and maintained these proceedings for delay, which is a separate basis for imposing a section 6673(a)(1) penalty. We struck all but minimal portions of their 74- and 75-page petitions. Their discovery requests ran to hundreds of pages, and we granted respondent's motions for protective orders with respect thereto, in part on the ground that we agreed with respondent that the discovery was intended to burden respondent unduly, waste his resources, and divert him from trial preparation. Petitioners actively, indeed, forcefully, prosecuted these cases until 2 weeks before trial. At that point, they attempted to withdraw their petitions, asserting a jurisdictional challenge premised on their disavowal of any commercial relationship with, and any enjoyment of benefits from, the United States. They refused to appear for trial or for a hearing on respondent's motions to dismiss for default, despite notice thereof in both instances. We interpret petitioners' actions in prosecuting (and not prosecuting) these cases as evidence of their intent to delay these proceedings. There are numerous years and, for some years, large dollar amounts involved in these cases. There is before us another case, involving Dr. Trowbridge and his 1996 and 1997 tax years. That case involves

conduct similar to that in this case.  See <u>Trowbridge v. Commissioner</u>, T.C. Memo. 2003-165.  We think that both petitioners deserve large penalties under section 6673(a)(1).  It is clear to us that Dr. Trowbridge took the lead in the sanctionable activity here.  Therefore, we shall impose on him a penalty of $25,000.  We shall impose on Ms. Martin, who filed her own petition and submitted documents and took actions that matched those submitted and taken by Dr. Trowbridge, a penalty of $15,000.

To reflect the foregoing,

<u>Appropriate orders will be issued, and decisions will be entered under Rule 155</u>.