**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-33

UNITED STATES TAX COURT

DEREK W. SOMOGYI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6433-11S.                     Filed April 10, 2014.

Derek W. Somogyi, pro se.

Chong S. Hong, for respondent.

SUMMARY OPINION

DEAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue.

Petitioner's additional tax due was paid before the issuance of the notice of deficiency. Respondent issued a statutory notice of deficiency to petitioner for 2007 and 2008 in which he determined accuracy-related penalties under section 6662(a) of $5,192.20 and $2,354.20, respectively. The issue for decision is whether petitioner is liable for accuracy-related penalties under section 6662(a) for 2007 and 2008.

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received in evidence are incorporated herein by reference. Petitioner resided in California when the petition was filed.

## Background

Petitioner has a bachelor of science degree in mechanical engineering. Petitioner worked with Andersen Consulting as a management consultant on large system implementations using software from Oracle or SAP, a German software company, between 1999 and 2003 or 2004. Petitioner then went to work for Teton Village Sports until 2005 and then with Wilson Properties-3, LLC (Wilson), from 2005 until 2010.

For the period 2006 through 2007 petitioner was also an independent contractor for Fusion Consulting (Fusion). Petitioner was the contractor responsible for testing and training in relation to the implementation of SAP software. Petitioner received $125,113 during 2007 for his work with Fusion and Wilson. In 2008 petitioner received $53,267 for his work with Wilson and his previous work for Fusion. At the inception of petitioner's work as an independent consultant, petitioner's "friends" suggested that he incorporate his business. Early in 2006 petitioner's friends recommended that he talk to the "Tax Doctor Corporation" (Tax Doctor) operated by a person representing himself to be Dr. Lawrence Murray (Murray). Petitioner spoke with Murray and members of Murray's staff. Petitioner's discussions with Murray and his staff consisted mostly of "a bit of a sales pitch". They explained how they would handle his tax return preparation, what the tax savings would be, and the "structure" they would use.

Murray proposed setting up two corporations and preparing petitioner's individual and corporate Federal income tax returns. Murray explained to petitioner that one corporation would be "operational" and the other would focus on "management". Petitioner was unsure at trial which corporation was the operations entity and which was the management entity. Under the agreement

with Murray petitioner would pay the Tax Doctor, as a fee for setting up the structure, the amount of the tax savings generated by the use of the structure. Petitioner paid the Tax Doctor about $20,000 to carry out the proposal. Petitioner received no guaranty or written opinion letter from the Tax Doctor on the efficacy of the proposed structure regarding his tax liability. Petitioner did not ask Murray or his staff about the legality of their proposal.

Before agreeing to use it, petitioner did discuss the Tax Doctor's proposal with his certified public accountant (C.P.A.). Petitioner described the proposal and told her that under the plan he would pay the Tax Doctor about $20,000 which he would then deduct the following year. His C.P.A. told him that she was willing to incorporate his business activity but she would not do what the Tax Doctor had proposed because it was very aggressive. Petitioner, despite the advice of his C.P.A., decided to accept the proposal of the Tax Doctor. Petitioner did not present the tax returns prepared by the Tax Doctor to his C.P.A. or any other tax professional for consideration.

Petitioner filed his 2006 Form 1040, U.S. Individual Income Tax Return, showing taxable income of zero. Nev Edel, one of the corporations the Tax Doctor formed for petitioner, filed a Form 1120, U.S. Corporation Income Tax Return, for the fiscal year ending (FYE) November 30, 2007. Nev Edel reported

gross receipts of $285,785, total income of $291,669, and total deductions of $295,214. The largest single deduction was $237,600 for "contracted services". Smoge Corp., the other corporation the Tax Doctor formed for petitioner, filed a 2006 Form 1120S, U.S. Income Tax Return for an S Corporation. Smoge Corp. reported total income of $186,640 and total deductions of $188,644. The largest single deduction was $172,166 for "contracted services". Petitioner testified that the $285,785 in gross receipts Nev Edel Corp. reported was the income he earned from Fusion Consulting.

Petitioner had the Tax Doctor prepare Forms 1040, 1120, and 1120S for 2007 and 2008, although that was not required under the original deal. Petitioner paid a flat fee of $2,000 for the preparation of the three returns for each of the years 2007 and 2008. As a result of respondent's examination of petitioner's returns for 2007 and 2008, petitioner agreed to pay additional individual income tax of $25,961 for 2007 and $11,771 for 2008.

Murray was prosecuted and convicted in 2010 of Federal crimes associated with the preparation of his own returns and the returns of others.

## Discussion

Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties

and additions to tax. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001); <u>Trowbridge v. Commissioner</u>, T.C. Memo. 2003-164, <u>aff'd</u>, 378 F.3d 432 (5th Cir. 2004). In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or addition to tax is appropriate. <u>Higbee v. Commissioner</u>, 116 T.C. at 446.

Respondent determined that for 2007 and 2008 petitioner underpaid a portion of his income tax because of negligence or disregard of rules or regulations and that there was a substantial understatement of income tax.

Section 6662(a) and (b)(1) and (2) imposes a 20% penalty on the portion of an underpayment of tax attributable to any one of various factors, including negligence or disregard of rules or regulations and a substantial understatement of income tax. "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. <u>See</u> sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

A "substantial understatement" includes an understatement of tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs.

Petitioner reported tax liabilities of zero for 2007 and zero for 2008. Petitioner's actual tax liabilities were $25,961 for 2007 and $11,771 for 2008.

There were substantial understatements of petitioner's individual income tax for both 2007 and 2008, since the understatement amounts will both exceed $5,000, which is greater than 10% of the tax required to be shown on both returns. Because there are substantial understatements for 2007 and 2008, the Court need not decide whether the underpayments are due to negligence.

The Court concludes that respondent has produced sufficient evidence to show that accuracy-related penalties under section 6662 are appropriate for 2007 and 2008.

Section 6664(c)(1) provides that the accuracy-related penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Section 1.6664-4(b)(1), Income Tax Regs., specifically provides: "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the

taxpayer." The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner argues that he was "tricked" into an improper tax "strategy". He testified that he relied in good faith on the representations and résumé of Murray indicating that Murray was a competent and honest professional. Petitioner emphasizes that he has acknowledged the "discrepancy" and paid the tax for 2007 and 2008.

The general rule is that a taxpayer has a duty to file a complete and accurate tax return and cannot avoid that duty by placing responsibility with an agent. United States v. Boyle, 469 U.S. 241, 252 (1985); Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). In limited situations, good-faith reliance on the advice of an independent, competent professional in the preparation of the tax return can satisfy the reasonable cause and good faith exception. Boyle, 469 U.S. at 250-251; Weis v. Commissioner, 94 T.C. 473, 487 (1990). Reliance on the advice of a professional tax adviser, however, does not necessarily demonstrate reasonable cause and good faith. Sec. 1.6664-4(b)(1), Income Tax Regs. All facts and circumstances must be taken into account. Sec. 1.6664-4(c)(1), Income Tax Regs. The advice must be based upon all pertinent facts and the applicable law. Sec. 1.6664-4(c)(1)(i), Income Tax Regs. The advice must not be based on

unreasonable factual or legal assumptions. Sec. 1.6664-4(c)(1)(ii), Income Tax Regs. The advice cannot be based on an assumption that the taxpayer knows, or has reason to know, is unlikely to be true. Id.

When a transaction has obviously suspect tax savings, it should put a reasonable taxpayer under a duty of inquiry to make a good-faith investigation of the underlying viability, financial structure, and economics of the transaction. Roberson v. Commissioner, T.C. Memo. 1996-335, aff'd without published opinion, 142 F.3d 435 (6th Cir. 1998); see also Mortensen v. Commissioner, 440 F.3d 375, 386-387 (6th Cir. 2006), aff'g T.C. Memo. 2004-279; Pasternak v. Commissioner, 990 F.2d 893, 903 (6th Cir. 1993) ("A reasonably prudent person would have asked a qualified tax adviser if this windfall was not too good to be true."), aff'g Donahue v. Commissioner, T.C. Memo. 1991-181.

Petitioner holds a bachelor of science degree in engineering and has worked as an independent contractor for various businesses. Petitioner admitted at trial that Murray was not a competent professional but was instead a criminal. Petitioner testified that Murray, through the Tax Doctor, told him that setting up two corporations would save him $20,000 from his otherwise $80,000 tax liability for the first year. In fact, petitioner reported zero individual income tax for 2006,

2007, and 2008, and his subchapter C corporation reported zero income tax for FYE November 30, 2007 and 2008.

Among the facts and circumstances to be considered when determining whether a taxpayer reasonably relied in good faith on tax advice is the taxpayer's purposes for entering into and structuring a transaction in a particular manner. Sec. 1.6664-4(c)(1)(i), Income Tax Regs. Petitioner did not testify to any business purpose for using the Tax Doctor structure. During his testimony petitioner seemed unable to describe how the Tax Doctor structure would work other than that one corporation was for operations and the other was for management. Petitioner did not appear to be able to describe how the Tax Doctor structure was able to negate his Federal income tax liabilities for 2006, 2007, and 2008. He also did not recall any specific questions he may have asked the Tax Doctor about the line items on his income tax returns for 2007 and 2008. And he added that he did not ask the Tax Doctor whether the proposed structure was legal for tax purposes.

The general rule in the Court of Appeals for the Ninth Circuit, to which this case would be appealable, were it appealable, is that a taxpayer cannot negate the accuracy-related penalty through reliance on the "promoter" of a transaction or on other advisers who have a conflict of interest. Hansen v. Commissioner, 471 F.3d 1021, 1031 (9th Cir. 2006), aff'g T.C. Memo. 2004-269; see also LaVerne v.

Commissioner, 94 T.C. 637, 652-653 (1990), aff'd without published opinion, 956 F.2d 274 (9th Cir. 1992), and aff'd without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991). "Courts have repeatedly held that it is unreasonable for a taxpayer to rely on a tax adviser actively involved in planning the transaction and tainted by an inherent conflict of interest." Canal Corp. v. Commissioner, 135 T.C. 199, 218 (2010). A tax adviser who has a financial stake in the transaction has a conflict of interest. Pasternak v. Commissioner, 990 F.2d at 903; Canal Corp. v. Commissioner, 135 T.C. at 218.

Petitioner testified that he was assured that Murray, through the Tax Doctor, could save him $20,000 in tax in the first year and that those "savings" would be petitioner's fee to the Tax Doctor for the structure and for the preparation of petitioner's first year's returns using the structure. Because the Tax Doctor's fee was to be determined by petitioner's putative tax savings, it was in the financial interest of the Tax Doctor to compute large tax savings. Petitioner knew or should have known that since the Tax Doctor controlled the preparation of the tax returns that would determine the Tax Doctor's own fee, there was the potential that the fee might be more important to the Tax Doctor than reporting petitioner's proper tax return positions. That turns out to have been the case.

Petitioner testified that he did not discuss the tax returns prepared by the Tax Doctor with any other tax professional. Petitioner testified in respect of Murray's advice that "I never felt that I needed to second-guess his tax structure". He said this despite the fact that he had discussed Murray's advice with his C.P.A., who advised him that she "could not do that" and that it was "very aggressive". The advice of the C.P.A., who had no financial stake in the outcome of petitioner's return positions, should have put petitioner on notice that additional scrutiny of Murray's advice was required.

The Court concludes that petitioner, a college graduate with some business experience, relied on the tax return advice of an adviser who had a financial interest in the return positions he recommended to zero out substantial income without a clear understanding of how that could be legally accomplished and ignored the cautionary advice of his C.P.A. in the process. Petitioner's reliance on the Tax Doctor's advice was not reasonable and in good faith as to either year.

Respondent's determination that petitioner is liable for the accuracy-related penalties under section 6662(a) for 2007 and 2008 is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.