T.C. Summary Opinion 2014-44

UNITED STATES TAX COURT

JASON DANIEL ABELITIS AND JAIME ANN ABELITIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5063-13S.                         Filed May 7, 2014.

Jason Daniel Abelitis and Jaime Ann Abelitis, pro sese.

<u>David W. Skinner</u>, for respondent.

SUMMARY OPINION

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code[1] in effect when the petition was

_____

[1]Unless otherwise indicated, all subsequent section references are to the
Internal Revenue Code (Code) in effect for the year in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $12,626 in petitioners' 2010 Federal income tax and an accuracy-related penalty of $2,525.20 under section 6662(a). The issues for decisions are whether petitioners are: (1) entitled to deduct car and truck expenses; and (2) liable for the accuracy-related penalty under section 6662(a).

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioners resided in the Commonwealth of Virginia when the petition was filed.

Jason Abelitis (petitioner) worked for Verizon at night as a full-time office technician from 2007 through 2012. Throughout the year 2010, however, petitioner would take time off from his Verizon job because of his accrued vacation time. On the other hand, when storms caused service disruptions, petitioner occasionally would work 50 or 60 hours per week for Verizon.

During the year at issue petitioner owned and operated a mobile advertising business which consisted of placing roadside signs to advertise for small

businesses as well as for his own mobile advertising business. Petitioner advertised for various clients, including a business that bought junk cars and a home refinancing business, and he posted lunch specials for a deli. The signage was typically in the form of paper fliers and was provided to petitioner by his clients. Petitioner described the signage as anything from a piece of posterboard with a wooden stake on the back that he would manually push into the ground, to "nicer" plastic signs, with a metal stake on the back, also manually pushed into the ground. Typically, however, the signage was a regular-size piece of paper.

Petitioner had fewer than two dozen clients in 2010 for his mobile advertising business. However, petitioner admitted that most of the signage that he posted was to advertise for his own mobile advertising business. These postings were typically a standard letter sheet posted onto other signs, lamp posts, or telephone poles promoting petitioner's mobile advertising business. Although petitioner drove all over the United States, he admitted that most of his clients were local and that he had only one "nationwide" client, a refinancing Web site.

During a six-year period petitioner reported substantial business losses with respect to his mobile advertising business, including during the 2010 tax year. These losses, after applying gross receipts, each exceed $50,000 and, except for the 2012 year, relate solely to car and truck expenses.

On petitioner's 2010 Schedule C, Profit or Loss From Business, with respect to his mobile advertising business, he reported gross receipts of $7,200 and $64,775 in car and truck expenses using the standard mileage rate. Petitioner claimed that he drove a total of 129,550 miles in 2010 for his mobile advertising business.

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that those determinations are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In some cases the burden of proof with respect to factual issues may shift to the Commissioner under section 7491(a). The Court finds that petitioners have not argued or shown that they have met the requirements of section 7491(a), and the burden of proof does not shift to respondent.

Business Expenses

Section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Deductions are strictly a matter of legislative grace, and a taxpayer must meet the specific statutory requirements for any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co.

v. Helvering, 292 U.S. 435, 440 (1934).  Taxpayers are required to maintain records sufficient to substantiate their claimed deductions.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Under certain circumstances, if claimed deductions are not adequately substantiated, we may estimate them, provided we are convinced that the taxpayer has incurred the expenses and we have a basis upon which to make an estimate.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Certain business deductions described in section 274, however, are subject to strict substantiation.  No deduction is allowed with respect to the use of any "listed property", as defined in section 280F(d)(4), unless certain elements are substantiated.  See sec. 274(d).  Passenger automobiles are listed property under section 280F(d)(4)(A)(i).

Under section 274(d), the elements that must be substantiated to deduct expenses for business use of an automobile are:  (1) the amount of each expenditure; (2) the mileage for each business use of the automobile and the total mileage of the automobile during the taxable period; (3) the date of the business use; and (4) the business purpose of the use of the automobile.  See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Petitioner testified that he drove almost every day in 2010 for his mobile advertising business, even while working full time for Verizon. He lived in Virginia; however, his travel logs indicate that he traveled to over 30 States, including locations as far west as California, as far south as Florida and Texas, and as far north as Maine, plus other States in between. Petitioner asserted that he was able to drive this far and work his full-time job in Virginia because he loved to drive and he slept very little because of insomnia.

Petitioner did not maintain contemporaneous mileage logs or odometer readings for his vehicle for 2010, but he provided a monthly schedule of locations driven and the total miles driven. Many of the descriptions accompanying the locations to which he drove note that he went to "canvas area". Petitioner explained that when he would canvas an area, he would scope out good locations to place fliers and typically this was not for a specific client but for his own advertising. At the "canvas area" petitioner would place his own fliers to advertise his mobile advertising activity.

Petitioner testified that all of his clients paid in cash, he never provided invoices to his clients, and his clients never asked for receipts.

The number of hours petitioner worked for Verizon and purportedly drove for his mobile advertising business simply strains credulity. Petitioner's monthly

mileage for 2010 ranged from 7,419 miles to 17,864 miles. Petitioner testified that he drove at approximately 60 miles per hour. If it is possible that he could average 60 miles per hour in the month that he drove 17,864 miles, he spent at least 300 hours on the road that month or almost 10 hours a day. All this while working full time for Verizon.

Furthermore, petitioner's extensive driving does not appear to be ordinary and necessary to his mobile advertising business. Petitioner claims that he drove all over the United States to post fliers and to advertise his own mobile advertising business, even though most of his clients were local clients except one online refinancing company. All the while, petitioner had very little income in relation to the excessive costs he incurred driving to put up flyers. Furthermore, the advertising for his own business appeared to be fruitless, as he never made a profit in any of the six years he engaged in the business, despite incurring great costs traveling to advertise mobile advertising business.

Notwithstanding whether petitioner's excessive driving was ordinary and necessary for his mobile advertising business, he simply did not satisfy the strict substantiation requirements of section 274(d) for claiming car and truck expenses. Furthermore, the monthly schedule that petitioner did provide simply did not have a high degree of probative value. See sec. 1.274-5T(c)(1), Temporary Income Tax

Regs., supra. Petitioner had no backup receipts and no beginning and ending mileage for the automobile he allegedly used. Furthermore, he provided no credible testimony from which the Court could determine his entitlement to deductions for the car and truck expenses.

At trial petitioner provided a document to the Court which purports to be an invoice dated December 31, 2010, from an accounting and legal consultant, recording time allegedly worked by an attorney for 2010 legal tax consultation. The invoice indicates that petitioner was purportedly charged $9,600 for the preparation of mileage logs, $4,800 for "Quickbooks financials, bank records, etc.", and $1,000 for Federal and State (Maryland and Virginia) tax preparation. The document states that the total cost for these services was paid in cash. Petitioner did not report these expenses on his 2010 return, admitted that he never saw any QuickBooks financial records for his mobile advertising business, and conceded that he prepared his own tax return.

The Court presumes petitioner is attempting to claim additional expense deductions for 2010 for these invoiced services. The expenses purportedly charged to petitioner in this invoice are highly dubious at best given the amounts and the services that were purportedly performed. Petitioner admitted that he prepared his own tax return, yet he purports to have paid an individual $1,000 to

prepare it.  In addition, it is highly unlikely that petitioner would pay $9,600 for someone to maintain mileage logs that were unfit to use to substantiate his mileage or that he would pay $4,800 for Quickbooks records that he never received or reviewed.  Given his testimony, it just strains credulity that petitioner incurred these expenses and actually chose to pay them.  Furthermore, petitioner failed to provide any documentation demonstrating that he actually paid these expenses.  Accordingly, petitioner is not entitled to a business expense deduction for these legal and accounting fees.

Accuracy-Related Penalty

Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties and additions to tax.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001); Trowbridge v. Commissioner, T.C. Memo. 2003-164, aff'd, 378 F.3d 432 (5th Cir. 2004).  In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or addition to tax is appropriate.  Higbee v. Commissioner, 116 T.C. at 446.

Respondent determined that for 2010 petitioners underpaid a portion of their income tax because of negligence or intentional disregard of rules or regulations.  Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the portion of the

underpayment attributable to negligence or disregard of rules or regulations. Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Code, and the term "disregard" includes any careless, reckless, or intentional disregard. See sec. 6662(c). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

The accuracy-related penalty is not imposed with respect to any portion of an underpayment if a taxpayer demonstrates that there was reasonable cause for that portion of the underpayment and that they acted in good faith with respect to that portion. See sec. 6664(c). Section 1.6664-4(b)(1), Income Tax Regs., specifically provides: "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of * * * the experience, knowledge, and education of the taxpayer." The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. Id.

On the basis of petitioner's failure to keep adequate books and records or to substantiate items properly, the Court concludes that respondent has produced sufficient evidence to show that the imposition of the accuracy-related penalty under section 6662(a) is appropriate for 2010.

Petitioners for 2010 failed to substantiate the claimed car and truck expenses. Petitioners did not show that there was reasonable cause for, and that they acted in good faith with respect to, any portion of the underpayment for 2010.

Therefore, respondent's determination of the accuracy-related penalty under section 6662(a) and (b)(1) for 2010 is sustained.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.